*In re* WENTWORTH

Docket No. 225148. Submitted December 5, 2001, at Detroit. Decided June 4, 2002, at 9:10 A.M.

Ashley Wentworth, a thirteen-year-old minor, was determined to have committed second-degree criminal sexual conduct with a six-year-old minor following delinquency proceedings in the Oakland Circuit Court, Family Division, Gene Schnelz, J. The respondent appealed, alleging, in part, that the registration and public notification requirements of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, are unconstitutional.

The Court of Appeals *held*:

1. The statute regarding second-degree criminal sexual conduct, MCL 750.520c, is constitutional and did not shift the burden of proof to the respondent.

2. The court did not err in finding that a witness the respondent sought to introduce as an expert witness was not qualified as an expert.

3. The requirements of the SORA are not an unconstitutional infringement of the respondent's protected liberty, property, and privacy interests. The state is not required to engage in due process beyond that afforded in the respondent's juvenile court proceedings before including information about the respondent in the public database of registered sex offenders.

4. The requirements of the SORA do not violate the exclusive jurisdiction of the family division of the circuit court over juveniles.

Affirmed.

CONSTITUTIONAL LAW — SEX OFFENDERS REGISTRATION ACT — JUVENILES.

The requirements of the Sex Offenders Registration Act with regard to juveniles are not an unconstitutional infringement of a juvenile's protected liberty, property, or privacy interests; the state is not required to engage in due process beyond that afforded a juvenile in juvenile court proceedings before including information about the juvenile in the public database of registered sex offenders (MCL 28.721 *et seq.*).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Pros-

ecuting Attorney, and *Thomas Richards*, Assistant Prosecuting Attorney, for the people.

*John J. Bologna,* for the defendant.

Before: K. F. KELLY, P.J., and HOOD and DOCTOROFF, JJ.

PER CURIAM. Respondent appeals as of right an order of disposition entered following delinquency proceedings in which the family court determined that respondent, a minor, committed second-degree criminal sexual conduct (CSC II) with a six-year-old minor, MCL 750.520c(1)(a). Respondent raises several issues, including a constitutional challenge to the registration and public notification requirements of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* We affirm.

I

Respondent first argues that MCL 750.520c is unconstitutional because it improperly shifts the burden of proof to an accused to rebut a presumption that a particular touch can be reasonably construed as being for the purpose of sexual gratification or arousal. The constitutionality of a statute is a question of law that we review de novo. *People v Jensen (On Remand)*, 231 Mich App 439, 444; 586 NW2d 748 (1998).

Statutes are presumed constitutional, and courts must construe statutes as constitutional unless the unconstitutionality of a statute is clearly apparent. *People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 493 (1996). The party challenging the statute has the burden of proving its unconstitutionality. *People v Trinity*, 189 Mich App 19, 21; 471 NW2d 626 (1991). A statute is not unconstitutional

merely because it is undesirable, unfair, or unjust. *In re Juvenile Commitment Costs*, 240 Mich App 420; 613 NW2d 348 (2000).

In *People v Piper*, 223 Mich App 642, 647; 567 NW2d 483 (1997), we rejected the argument that the statute at issue in this case shifted the burden of proof to the accused. We found that the statute merely requires the prosecution to establish an intentional contact that could reasonably be construed as being for a sexual purpose and, therefore, does not shift the burden of proof. *Id.* See also *People v Fisher*, 77 Mich App 6, 13; 257 NW2d 250 (1977); *People v Brewer*, 101 Mich App 194, 195-196; 300 NW2d 491 (1980).

Respondent counters that MCL 750.520c not only places a burden on her but that the burden, as applied to this case, was unbearable, citing *Mullaney v Wilbur*, 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975). However, in *Piper*, we distinguished *Mullaney* because under the challenged law in that case, the defendant had the burden of establishing by a preponderance of the evidence that the killing was committed in the heat of passion on sudden provocation to mitigate felonious homicide to manslaughter. *Piper, supra* at 647, n 2. Conversely, we held that MCL 750.520c placed no such burden on the defendant. *Id.* Respondent's reliance on *Mullaney* is misplaced, and her constitutional challenge to this statute fails.

II

Respondent next argues that the trial court abused its discretion in refusing to admit her witness as an expert to provide testimony regarding alternative motivation for sexual contact because she was not qualified in the field of child sexual abuse. We review

a trial court's decision regarding the admissibility of expert witness testimony for an abuse of discretion. *People v Peebles*, 216 Mich App 661, 667; 550 NW2d 589 (1996).

MRE 702 governs the admissibility of expert testimony. Under this rule, evidence is admissible if it complies with a three-part test. *People v Beckley*, 434 Mich 691, 711; 456 NW2d 391 (1990). First, the expert must be qualified. Second, the evidence must provide the trier of fact a better understanding of the evidence or assist in determining a fact in issue. Finally, the evidence must be from a recognized discipline. *Id.*

We find that the trial court committed no evidentiary error because it correctly held that the witness was not qualified as an expert. Because this was a bench trial, the witness would not have assisted the trial court in determining the ultimate issue in this case or determining a fact in issue, nor would the testimony have provided the trial court with a better understanding of the evidence. *Id.*

III

Respondent also raises constitutional challenges to the SORA. In her first argument, respondent claims that the SORA unconstitutionally deprives her of liberty interests without due process of law.

"A state may not deprive any person of life, liberty, or property without due process." *Tolksdorf v Griffith*, 464 Mich 1, 7; 626 NW2d 163 (2001); *People v Kevorkian*, 447 Mich 436, 464; 527 NW2d 714 (1994); US Const, Am XIV; Const 1963, art 1, § 17. Therefore, in order to prevail on her due process argument, respondent must show that the SORA deprives her of a protected liberty or property interest. *Lanni v Engler*, 994 F Supp 849, 855 (ED Mich, 1998). We note, how-

ever, that " 'the full panoply of constitutional rights' " does not apply to a juvenile proceeding, and the standard for due process is fundamental fairness. *In re Whittaker*, 239 Mich App 26, 28; 607 NW2d 387 (1999), quoting *People v Hana*, 443 Mich 202, 225; 504 NW2d 166 (1993).

Pursuant to the SORA, a juvenile for whom an order of disposition is entered for commission of one of several sex offenses,[1] is required to register with the local law enforcement agency. MCL 28.722(a)(iii) and 28.723(1)(a); *In re Ayres*, 239 Mich App 8, 15; 608 NW2d 132 (1999). When our Legislature first enacted the SORA in 1994, the act simply required that offenders register with local law enforcement agencies. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000). In 1999, in response to a federal mandate, the Legislature amended the SORA, adding public notification provisions. Under that amendment, the Department of State Police is charged with maintaining a computer database that allows persons living within the same zip code as an offender to access information that includes the offender's name, address, physical description, and the offense. *Id.*; MCL 28.728(2). A juvenile offender is initially exempt from inclusion within the public database; however, for CSC II violations, that exemption ends when the individual becomes eighteen years old. MCL 28.728(2). In addition, because the defendant in this case violated MCL 750.520c(1)(a), she is required to register for life. MCL 28.725(7)(b).

In *Lanni, supra*, the United States District Court, Eastern District of Michigan, addressed this issue and concluded that the SORA does not violate a convicted

---

[1] CSC II, MCL 750.520c, is included as one of the listed offenses. MCL 28.722(d)(ix).

sex offender's due process rights. *Lanni, supra* at 855.

> The Act merely compiles truthful, public information and makes it more readily available. To the extent that plaintiff may suffer injury to his reputation or loss of employment opportunities, such injuries are purely speculative on the present record. Moreover, this Court finds that any detrimental effects that may flow from the Act would flow most directly from plaintiff's own misconduct and private citizen's reaction thereto, and only tangentially from state action. [*Id.*]

The *Lanni* court further found that, even if the SORA resulted in a deprivation of liberty or property, due process would not alleviate the alleged deprivation because the local law enforcement agency had no discretion to determine which sex offenders would be subject to the act. *Id.* In *Ayres, supra,* a panel of this Court agreed with and adopted the analysis of *Lanni* in the context of determining whether the SORA constitutes cruel or unusual punishment. *Ayres, supra* at 18.

We likewise agree with the *Lanni* court that no due process rights are implicated by the SORA. The SORA did not deprive respondent of liberty. Any deprivation respondent suffered flowed not from the act, but from her own misconduct that resulted in the juvenile disposition. *Id.* Injury to a person's reputation is not a protected liberty or property interest. *Paul v Davis,* 424 US 693, 711-712; 96 S Ct 1155, 47 L Ed 2d 405 (1976); *Siegert v Gilley,* 500 US 226, 233-234; 111 S Ct 1789; 114 L Ed 2d 277 (1991). Further, even if the SORA deprived respondent of liberty, she was afforded due process, i.e., notice and an opportunity to be heard, through the family court proceedings before entry of the order of disposition. See *Haddad v Fromson,* 154 F Supp 2d 1085, 1096 (WD Mich, 2001). Consequently,

we conclude that respondent failed to show that the SORA deprives her of due process liberty interests.

Respondent also claims that the SORA deprives her of her constitutional right to privacy because public dissemination of her personal data will damage her reputation and prevent her from obtaining employment. However, as noted above, reputational interests have not been accorded the same level of protection in our society as interests that are deemed to be " 'implicit in the concept of ordered liberty.' " *Paul, supra* at 713 (citation omitted). Further, the information made public by the SORA is already a matter of public record and, therefore, no privacy rights are implicated. Although public notification may ultimately result in ostracism, that effect is not so inevitable as to be deemed to have been imposed by the law itself. *Ayres, supra.* Respondent cannot establish a legitimate privacy interest in preventing compilation and dissemination of truthful information that is already a matter of public record. *Lanni, supra* at 856. See also *Akella v Michigan Dep't of State Police,* 67 F Supp 2d 716, 728-729 (ED Mich, 1999).

Respondent argues that because the Michigan courts have not addressed a due process claim regarding juveniles,[2] we should adopt the holding of the New Jersey Supreme Court in *Doe v Poritz,* 142 NJ 1; 662 A2d 367 (1995), that was followed by the Massachusetts Supreme Judicial Court in *Doe v Attor-*

---

[2] Respondent appears to be correct in her assertion that her due process arguments present an issue of first impression. This Court has addressed whether the SORA (1) violates the Ex Post Facto Clauses of the Michigan and United States Constitutions, *Pennington, supra;* (2) constitutes cruel or unusual punishment, *Ayres, supra;* (3) violates equal protection rights, *Whittaker, supra;* and (4) applies to offenders sentenced pursuant to the Youthful Trainee Act, MCL 762.11 *et seq.; People v Rahilly,* 247 Mich App 108; 635 NW2d 227 (2001). However, we have yet to determine whether the act implicates due process rights.

*ney General,* 426 Mass 136; 686 NE2d 1007 (1997). Because decisions of these courts are only persuasive authority and are not binding on this Court, *People v Jamieson,* 436 Mich 61, 86-87; 461 NW2d 884 (1990), we decline to follow these cases. Further, we disagree with the conclusions reached by the court in *Poritz* that public disclosure of information that is readily available to the public implicates a privacy right, or that the alleged harm to an offender's privacy or reputation caused by public disclosure constitutes a protectible liberty interest so that further due process (i.e., a hearing) is required. *Poritz, supra* at 81-86, 98-100, 102-106.

We conclude that the requirements of the SORA are not an unconstitutional infringement of respondent's protected liberty, property, or privacy interests, and that the state is not required to engage in due process beyond that afforded in respondent's juvenile court proceedings before including information about respondent in the public database of registered sex offenders.

IV

Finally, respondent argues that the SORA violates the exclusive jurisdiction of the family division of the circuit court over juveniles. We disagree. Because respondent is under the age of seventeen and violated a law of this state, she is under the exclusive original jurisdiction of the family division of the circuit court. MCL 712A.2(a)(1).

Contrary to respondent's argument, the registration requirements of the SORA do not confer *jurisdiction* to the Michigan State Police over juveniles; rather, the act merely uses the law enforcement agency to implement and enforce the law. Thus, the SORA does

not violate the exclusive jurisdiction of the family division of the circuit court over juveniles.

v

Although we hold that the SORA is not an unconstitutional deprivation of respondent's liberty or privacy interests, we express our concern over the draconian nature of this act. As noted above, under the requirements of the SORA, respondent's registration would remain confidential while she remains a juvenile; however, once she reaches the age of majority, that information would be added to the public database and would remain there for the rest of her life. Although we do not debate the seriousness of the circumstances surrounding the offense in this particular case, we question the propriety of publicly and permanently labeling juveniles as convicted sex offenders. Traditionally, our justice system has distinguished between juvenile delinquency and adult criminal conduct. MCL 712A.1(2), which confers jurisdiction over juveniles on the family division of the circuit courts, specifically states that "proceedings under this chapter are not criminal proceedings." MCL 712A.23 also limits the admissibility of juvenile records in both criminal and civil proceedings in an attempt to "hide youthful errors from the full glare of the public . . . ." *People v Poindexter*, 138 Mich App 322, 326; 361 NW2d 346 (1984). The public notification provisions of the SORA appear to conflict with our traditional reluctance to criminalize juvenile offenses and our commitment to keep juvenile records confidential.

In *Ayres, supra,* we held that the juvenile registration requirements of the SORA did not constitute cruel or unusual punishment in part because juveniles were exempt from the public notifications requirements of

the act. *Ayres, supra* at 20-21. We also concluded "[i]n light of the existence of strict statutory safeguards that protect the confidentiality of registration data concerning juvenile sex offenders" that the act did not offend the premise of our juvenile justice system that "a reformed adult should not have to carry the burden of a continuing stigma for youthful offenses." *Id.* at 21. However, the recent amendment of the statute removing those confidentiality safeguards raises questions about the continuing validity of our holding in *Ayres*. Because respondent did not raise this issue on appeal, we will not address it in this opinion. *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). Instead, we invite the Legislature to reconsider whether the implied purpose of the act, public safety, is served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression.

Affirmed.